STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 04-846


LOUIS' FLORIST SHOP OF LAKE CHARLES, INC., ET AL.

VERSUS

UNITED FIRE & CASUALTY COMPANY, ET AL.


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
LAKE CHARLES CITY COURT
PARISH OF CALCASIEU, NO. 02-667
HONORABLE JOHN STEWART HOOD, CITY COURT JUDGE

\*\*\*\*\*\*\*\*\*\*


BILLY HOWARD EZELL
JUDGE

\*\*\*\*\*\*\*\*\*\*


Court composed of Billie Colombaro Woodard, Marc T. Amy, and Billy Howard
Ezell, Judges.

Woodard, J., concurs in the results.


REVERSED AND REMANDED.


**Maurice L. Tynes**
**Attorney at Law**
**4839 Ihles Rd**
**Lake Charles, LA 70605**
**(337) 479-1173**
**Counsel for: Plaintiffs/Appellants**
**Louis' Florist Shop of Lake Charles, Inc.**
**Louis Lacaze**
**Betty Lacaze**

**James Eugene Williams**
**Woodley, Williams Law Firm**
**P. O. Box 3731**
**Lake Charles, LA 70602-3731**
**(337) 433-6328**
**Counsel for: Defendant/Appellee**
**United Fire & Casualty Company**

**EZELL, JUDGE.**

Louis' Florist of Lake Charles, Inc., and Louis and Betty LaCaze (hereinafter collectively referred to as Louis' Florist) appeal the grant of summary judgment in favor of United Fire and Casualty Company, dismissing their claims for breach of a duty to defend and investigate claims and in failing to negotiate a good faith settlement on behalf of its insureds.

## FACTS

The facts leading up to this litigation are not in dispute. On September 11, 1998, there was an accident involving a vehicle owned by Louis' Florist and driven by its employee with another vehicle driven by Walter Milburn. Louis' Florist had a policy of insurance covering the accident issued by American Indemnity Company, the predecessor to United. The policy provided liability coverage of up to $100,000 per person and $300,000 per accident.

Milburn filed suit, and counsel was obtained by the insurance company to represent the interests of Louis' Florist. In a certified letter dated October 8, 1998, to Louis' Florist and its employee, Tavio Giusti, a claims representative for American Indemnity, acknowledged receipt of the suit and advised that American Indemnity had retained the services of Frederick Cappel to represent its interests and its insureds' interests. The letter also advised that Milburn's recovery in the suit might exceed the policy limits of $300,000. Louis' Florist was advised that any excess judgment would be its responsibility or the responsibility of its excess insurer or insurers. It was further advised that it could hire counsel of its own choosing, "at [its] own expense" to represent its interests in excess of the policy limits and to assist in the defense of the suit.

1

Sometime later, Milburn made an offer to settle the matter for $150,000. This offer was rejected. Subsequently, Milburn made a demand for $300,000. On January 17, 2000, Bruce Holmes, a litigation supervisor, sent another letter to Louis' Florist again notifying it that Milburn had made a demand for an unspecified amount of damages and that the amount could exceed the liability limits of the policy. He again informed Louis' Florist that Mr. Cappell had been hired to defend the action but that Louis' Florist could hire its own attorney at its own expense to represent its personal interest in the suit.

Louis' Florist then hired Brian Coody to represent it. United paid $1,200 of the legal fees charged by Coody but refused to pay the remainder of the $9,120.75 total fee. Louis' Florist filed suit against United claiming damages, penalties, and attorney fees pursuant to La.R.S. 22:658 and 22:1220 and damages for a breach of the general fiduciary duties owed by an insurer to its insured. United filed a motion for summary judgment which was argued on March 30, 2004. The trial court found that there were no allegations of bad faith on behalf of United and granted the motion for summary judgment dismissing Louis' Florist's case. Louis' Florist appeals.

## SUMMARY JUDGMENT

Our review of a trial court's grant of summary judgment is *de novo*, "viewing the record and all reasonable inferences that may be drawn from it in the light most favorable to the non-movant." *Hines v. Garrett*, 04-806, p.1 (La. 6/25/04), 876 So.2d 764, 765. Summary judgment should only be granted if "there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B).

> A fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion,

2

there is no need for trial on that issue and summary judgment is appropriate.

*Hines*, 876 So.2d at 765-66 (citation omitted).

In this case United is the party who has filed for summary judgment. It claimed that there was no basis for Louis' Florist's claims that it failed to negotiate a good-faith settlement, provide a good faith defense for its insureds, or defend and investigate Milburn's claim. Louis' Florist, on the other hand, claims that Louisiana liability insurers have a duty to defend, a duty to investigate, and an affirmative duty of good faith and fair dealing with regard to their insureds and United breached these duties.

The trial court agreed with United's position and found that "all of plaintiffs' allegations are directed to the timeliness and thoroughness of the defendant's counsel's efforts. The trial court found no allegations whatsoever even approaching 'bad faith.'" In coming to this conclusion, the trial court relied on the case of *Vaughn v. Franklin*, 00-291, p.8 (La.App. 1 Cir. 3/28/01), 785 So2d 79,86, *writ denied*, 01-1551 (La. 10/5/01), 798 So.2d 969, which defined bad faith as "more than mere bad judgment or negligence; it implies a dishonest purpose or evil intent." However, Vaughn also defined the more venial offense of arbitrariness as "a willful and unreasoning action, without consideration for the facts and circumstances presented, or acting with unfounded motivation." *Id.*

Jurisprudence establishes that "'the insurer is the champion of its insured's interests; that the interests of the insured are paramount to those of the insurer, and that the insurer may not gamble with the funds and resources of its policyholders.'" *McGee v. Omni Ins. Co.*, 02-1012, p.9 (La.App. 3 Cir. 3/5/03), 840 So.2d 1248, 1255, *writ denied*, 03-1375, 03-1382, (La. 12/12/03), 860 So.2d 1149 (*quoting Cousins v. State Farm Mut. Auto. Ins. Co.*, 294 So.2d 272, 275 (La.App. 1 Cir.), *writ refused*,

3

296 So.2d 837 (La.1974)).

In *Smith v. Audubon Ins. Co.*, 95-2057, pp. 7-11 (La. 9/5/96), 679 So.2d 372, 376-77(emphasis supplied) (footnote omitted), the supreme court thoroughly discussed the law regarding an insurer's responsibility in investigating and defending claims against its insured, as follows:

> In the absence of bad faith, a liability insurer generally is free to settle or to litigate at its own discretion, without liability to its insured for a judgment in excess of the policy limits. William Shelby McKenzie & H. Alston Johnson, III, 15 *Louisiana Civil Law Treatise-Insurance Law and Practice* § 218 (1986). On the other hand, a liability insurer is the representative of the interests of its insured, and the insurer, when handling claims, must carefully consider not only its own self-interest, but also its insured's interest so as to protect the insured from exposure to excess liability. *Holtzclaw v. Falco, Inc.*, 355 So.2d 1279 (La.1978) (on rehearing). Thus, a liability insurer owes its insured the duty to act in good faith and to deal fairly in handling claims. *Id*.
> . . . .
>
> **Thus, the determination of whether the insurer acted in bad faith turns on the facts and circumstances of each case**. Of course, an insurer is not obliged to compromise litigation just because the claimant offers to settle a claim for serious injuries within the policy limits, and its failure to do so is not by itself proof of bad faith. **The determination of good or bad faith in an insurer's deciding to proceed to trial involves the weighing of such factors, among others, as the probability of the insured's liability, the extent of the damages incurred by the claimant, the amount of the policy limits, the adequacy of the insurer's investigation, and the openness of communications between the insurer and the insured.** Nevertheless, when an insurer has made a thorough investigation and the evidence developed in the investigation is such that reasonable minds could differ over the liability of the insured, the insurer has the right to choose to litigate the claim, unless other factors, such as a vast difference between the policy limits and the insured's total exposure, dictate a decision to settle the claim.

While the supreme court recognized that insurers owe fiduciary duties to their insureds, the supreme court has also observed that there are now additional causes of action for the breach of specific acts listed in La.R.S. 22:1220 and 22:658. *Theriot v. Midland Risk Ins.*, 95-2895 (La. 5/20/97), 694 So.2d 184 (See footnote 15).

4

Bad faith in handling insurance claims obviously includes something more than an evil intent. The facts and circumstances of each case must be evaluated to determine whether the insurer breached its fiduciary obligations or breached the specific acts listed in La.R.S. 22:1220 and 22:658. United claims that there is no genuine issue of material fact that it properly investigated the claim by Milburn in defending Louis' Florist. In opposition to the motion for summary judgment, Louis' Florist introduced the affidavit of Brian Coody, the attorney it hired to defend it.

The relevant portions of the affidavit are:

9. After being retained by Louis' Florist, affiant became informed that American Indemnity deemed Walter Milburn to lack credibility but had no investigation, no discovery, and no evidence to support that position, nor did it appear the insurer had any plans to obtain any for trial or defense purpose[s].

10. Affiant also discovered the mediation date was too close to allow adequate time to develop impeachment evidence for use at the mediation, and to attempt settlement within limits.

11. Affiant on behalf of the insured, Louis' Florist, demanded a delay in the mediation, and demanded that American Indemnity perform the necessary discovery and investigation to cause the probability of settlement at mediation.

12. Affiant undertook substantial effort to obtain discovery and evidence to use as impeachment against Walter Milburn [sic] at the mediation and then trial if needed.

13. As a result of the work done by affiant, or at his direction, the mediation resulted in settlement for $170,000, within the policy limits, and avoidance of an excess judgment. Mediation occurred May 30, 2000.

14. On April 17, 2000, affiant wrote a letter . . . to American Indemnity's defense attorney with his own evaluation and demanding settlement within policy limits of $300,000. This demand was also made on March 24, 2000.

5

15. On April 17, 2000, affiant wrote a long letter . . . to American Indemnity recommending various discovery and investigation that was needed. Once accomplished, impeaching evidence was discovered. Affiant also had verbal conversations with legal counsel for American Indemnity wherein advice and recommendation was given with regard to the hiring of a psychiatric I.M.E. which, in turn, developed significant evidence which was utilized by the defense to lower the settlement value of the claim, mostly based off of evidence which had been and/or should have been known by the defendant insurer since shortly after suit had been filed.

. . . .

17. By contacts with Walter Milburn's attorney, affiant is certain the lawsuit would not have been settled at mediation within policy limits, and therefore, the likelihood of an excess judgment clearly would have resulted. Affiant believes that his legal work was the reason Louis' Florist avoided the consequences of an excess judgment, yet these efforts could have and should have been taken by the insurer long before Louis' Florist felt obligated to hire him to protect them.

We find that Louis' Florist has put forth sufficient evidence to create a genuine issue of material fact as to whether United handled this claim fairly and conducted an adequate investigation. This decision does not imply that we find that Louis' Florist has proven its case. We find only that there are issues to be resolved concerning the actions of United's counsel.

For these reasons we reverse the judgment of the trial court granting United's motion for summary judgment. Costs of this appeal are assessed to United, and the case is remanded to the trial court for further proceedings.

**REVERSED AND REMANDED**.

6